```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                   WESTERN DIVISION
```

CELESTE THOMAS,                 :
                                :    NO. 1:09-CV-00948
    Plaintiff,                  :
                                :
  v.                            :    **OPINION & ORDER**
                                :
ANTHONY PLUMMER, et al.,        :
                                :
    Defendants.                 :

This matter is before the Court on Defendant Jennifer Myers' Motion to Dismiss (doc. 25) and Defendant Anthony Plummer's Motion to Dismiss (doc. 32), and the respective memoranda in response and reply (docs. 36, 37). For the following reasons, the Court DENIES the motions.

**I.   Background**

The following facts come from Plaintiff's Amended Complaint and from the police cruiser videos of the incident in question. In the early morning hours of August 23, 2009, Cincinnati Police Officers Glueck and Myers pulled over the car in which Plaintiff was a passenger after having seen the car rear-end a city garbage truck and drive off (doc. 20). Plaintiff produced her driver's license when asked, but the driver, a Mr. Washington, did not have his driver's license so he could not produce it (Id.). Washington was asked to exit the car, which he did, and the officers proceeded to secure an identification card and run his identification while Plaintiff remained in the car (Id.).

Officer Glueck discovered that Washington had an

outstanding felony warrant for burglary, so, with Officer Myers' assistance, she arrested and handcuffed Washington (Id.). Washington did not quietly submit to the arrest, and the officers leaned him up against the hood of the police car in order to fully effectuate the arrest. At this time, Plaintiff exited the car and asked why Washington was being arrested (Id.). Officers Glueck and Myers yelled at her several times to get back in the car (Id.). Plaintiff eventually complied, and sat back in the passenger seat of the car (Id.).

When Defendant Plummer arrived to assist, Officers Glueck and Myers were still working to secure Washington, with him still leaned up against the hood of the car. Plummer was directed to keep Plaintiff in the car. Instead, Plummer approached the car with his firearm drawn and pointed at Plaintiff and ordered her to get out of the car (Id.). Plaintiff obeyed this directive and asked again what was going on (Id.). In response, Plummer ordered Plaintiff repeatedly to "get on the ground" (Id.). Plummer holstered his gun and removed his taser, at which point he again yelled at Plaintiff to "get on the ground" and threatened her with tasing if she failed to comply. Plaintiff dropped to her knees with her hands in the air, all the while asking "What did I do? What's going on?". While Officer Glueck approached Plaintiff to place handcuffs on her, Plummer walked behind Plaintiff and shot her in the back with his taser (Id.).

2

After Plaintiff recovered from the tasing, she was handcuffed, arrested for obstruction of official police business, and placed in a police cruiser (Id.). With Plaintiff and Washington both secured in cruisers, Officer Myers searched the car, where a bottle of vodka was found (Id.). Plaintiff successfully challenged the legitimacy of the search in state court, and the bottle was suppressed (Id.). At a bench trial, Plaintiff was acquitted of the obstruction charge (Id.). An internal police investigation of Plummer's use of the taser found that Officer Glueck did not believe that Plaintiff was a threat while she was on her knees just before Plummer tased her, that Plummer's use of the taser did not conform with department policy and procedure, and that Plummer used excessive force (Id.). As a result of his actions, Plummer was fired from the police department (Id.).

In her amended complaint, Plaintiff brings a Section 1983 action and alleges (1) that Defendant Myers violated her Fourth Amendment right to be protected from unreasonable searches when Myers searched the car without a warrant and pursuant to no exception to the warrant requirement and (2) that Defendant Plummer used excessive force, also in violation of the Fourth Amendment (doc. 20).[1]

---

[1] Originally, Plaintiff included state-law claims for false arrest, malicious prosecution and intentional and/or negligent infliction of emotional distress, which claims were voluntarily

## II.  The Applicable Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible.  Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009).  A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the

---

dismissed (doc. 35).

4

reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the

> concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III. Officer Myers' Motion**

Defendant Myers' motion addresses only Plaintiff's state-law claims, all of which were voluntarily dismissed. As Defendant Myers filed no reply to Plaintiff's response to her motion to dismiss, the Court is left to assume that the defense of qualified immunity, which Defendant Myers raised in her motion with respect to the state-law claims, is also raised against the claim that she violated Plaintiff's Fourth Amendment right to be protected from unreasonable searches.

Plaintiff contends that Defendant Myers violated her right to be free from unreasonable searches and argues that the state court's decision that the search was invalid should be binding as res judicata and because federal courts should give effect to state court decisions (doc. 36, citing 28 U.S.C. § 1738). In addition, Plaintiff argues that the search was unconstitutional because the Supreme Court has held that police may "search a vehicle incident to a recent occupant's arrest when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search [or when] there is probable cause to

6

believe the vehicle contains evidence of criminal activity" (doc. 36, citing Arizona v. Gant, 129 S.Ct. 1710, 1719-21 (2009)).

Government officials like the Defendants are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine of qualified immunity is "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). In determining whether Defendant Myers is entitled to qualified immunity, the Court asks two questions: Viewing the facts in the light most favorable to Plaintiff, has she shown that a constitutional violation has occurred? Was the right clearly established at the time of the violation? Id. at 818 (upholding the two-part analysis of Saucier v. Katz, 533 U.S. 194 (2001) but no longer mandating the sequence of the prongs).

Defendant Myers is not entitled to qualified immunity because, viewing the facts in the light most favorable to Plaintiff, Plaintiff has shown that Myers conducted an unreasonable search of Plaintiff's car when the search was conducted absent a search warrant and while Plaintiff and Washington were handcuffed and detained inside police cruisers. Even if the state court's decision to suppress the evidence were not to be given preclusive effect, this Court would easily find that a constitutional

violation occurred with the search of the car. As the Supreme Court held in Gant, such a search is impermissible as police are authorized to "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search...[or] when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Gant, 129 S.Ct. at 1719. Here, where the recent occupants were both cuffed and detained and where there was no reasonable basis to believe that the vehicle contained any evidence of obstruction of official business, Thomas' crime of arrest. Gant clearly controls here, and the search of Plaintiff's car was unconstitutional.

As to the second Saucier prong, the general right to be free from unreasonable searches was indisputably clearly established at the time of this incident. Gant was decided several months before this incident so, to the extent it was not clear prior to Gant that a detained suspect cannot reasonably be subjected to a search of her vehicle under these circumstances, Gant made it clear to law enforcement well before the incident here. Consequently, Defendant Myers is not entitled to the protection of qualified immunity as to Plaintiff's unreasonable search claim. Defendant Myers' motion to dismiss is therefore denied.

**IV. Defendant Plummer's Motion**

Plummer premises his motion to dismiss on his assertion of qualified immunity (doc. 32). He encourages the Court to "focus heavily" on the cruiser videos to determine that his tasing of Plaintiff was reasonable (Id.). Specifically, Plummer contends that Plaintiff was inciting tension in a situation that was already tense for officers, that she was a threat to officers because she refused to comply with repeated commands to get down on the ground, and that she questioned the officers' authority by repeatedly informing the officers that her father was a city councilman (doc. 37).

Plaintiff responds by contending that the videos demonstrate that she had either already been seized at the time she was tased by Plummer or that the tasing itself constituted a seizure under the Fourth Amendment (doc. 36). She argues that qualified immunity should not be available to Plummer because she was not engaged in serious or violent criminal activity when he tased her; she did not pose a threat to officers; and she did not actively resist or flee from arrest (Id.). Thus, she contends, Plummer's actions were unreasonable in light of clearly established law (Id.).

The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers. Smoak v. Hall, 460 F.3d 768, 783 (6th Cir. 2006). In evaluating whether this prohibition has been violated, courts use an "objective reasonableness" test,

9

which requires consideration of the totality of the circumstances. See Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); Summerland v. County of Livingston, 240 Fed.Appx. 70, 76 (6th Cir. 2007)("The ultimate question is 'whether the totality of the circumstances justified a particular sort of search or seizure.'" (quoting Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). This is a fact-specific, not mechanical, test, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee. Wysong v. City of Heath, 260 Fed.Appx. 848, 854 (6th Cir. 2008). At base, the question is whether the facts "demonstrate that a hypothetical reasonable officer" would have "known that his actions, under the circumstances, were objectively unreasonable." Lyons v. City of Xenia, 417 F.3d 565, 576 (6th Cir. 2005).

The Court has little trouble here finding that a hypothetical reasonable officer would have known that tasing a suspect who is on her knees with her hands in the air is objectively unreasonable. It is true that the videos show that Plaintiff did not immediately respond to Plummer's commands to get

out of the car and on the ground. However, the videos also show that Plaintiff had, moments before, been ordered to remain in the car. Indeed, Plummer was instructed by Myers and Glueck to ensure that Plaintiff remain in the car. Instead, he approached Plaintiff with gun drawn and in an overtly hostile and aggressive manner, yelling at Plaintiff to get out of the car. It is no wonder that Plaintiff did not immediately obey–in the span of seconds, she had been screamed at by Myers and Glueck to get back in the car then, upon complying with that command, was screamed at, at gunpoint no less, by Plummer to get out of the car.

To be sure, Plaintiff's characterization of her behavior as "largely peaceful" and reflecting "substantial compliance" is not quite accurate. Plaintiff did not immediately comply with Myers' and Glueck's orders to remain in the car, instead wandering closer to Washington's arrest, imploring the officers to tell her what was going on and informing them of her father's position as councilman. Nor did Plaintiff immediately comply with Plummer's orders to get on the ground, which later changed to face down on the ground. Instead, Plaintiff exited the car but continued to ask what was happening and insist that she had done nothing wrong. It was only upon Plummer's third threat to use the taser that she actually fell to her knees.

However, the critical fact is that Plummer waited until Plaintiff had actually complied, until any reason for concern had

11

been eliminated, and she was actually on the ground, hands in the air, before he, in a clearly calculated way, moved to stand behind her and fired his taser in her back. Under the circumstances present here, Plummer's choice to tase a woman who was on her knees, hands in the air was simply unreasonable. See, e.g., Kijowski v. City of Niles, 372 Fed.Appx. 595, 600 (6th Cir. 2010)(reversing district court's finding of qualified immunity where officer removed suspect from truck and tased him when suspect had not resisted arrest or otherwise posed a threat).

Turning now to the second prong of the qualified immunity inquiry, the Court similarly has little trouble finding that Plummer "had fair notice that [his] conduct was unlawful". See Lyons, 417 F.3d at 579, citing Brosseau v. Haugen, 543 U.S. 194, 198 (2004). First, Plummer's actions were against departmental policy, so he cannot legitimately claim to not have been on notice that his conduct was unlawful. Second, "the right to be free from physical force when one is not resisting the police is a clearly established right." Wysong, 260 Fed.Appx. at 856. "Even without precise knowledge that the use of the [T]aser would be a violation of a constitutional right," Plummer "should have known based on analogous cases that [his] actions were unreasonable." Landis v. Baker, 297 Fed.Appx. 453, 463 (6th Cir. 2008). For example, the Sixth Circuit has held that "a totally gratuitous blow with a policeman's nightstick may cross the constitutional line," McDowell

12

v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988); "[a]n officer has used excessive force when he pepper sprays a suspect who has not been told she is under arrest and is not resisting arrest," Grawey v. Drury, 567 F.3d 302, 311 (6th Cir. 2009)(citing Atkins v. Twp. of Flint, 94 Fed.Appx. 342, 349 (6th Cir. 2004)); it may be excessive force to use pepper spray on suspect who was resisting arrest but "not threatening anyone's safety or attempting to evade arrest by flight," Greene v. Barber, 310 F.3d 889, 898 (6th Cir. 2002); and use of a chemical spray may be unconstitutional when there is no immediate threat to the safety of the officers or others, Vaughn v. City of Lebanon, 18 Fed.Appx. 252, 266 (6th Cir. 2001). Against the backdrop of existing law, Plummer simply could not reasonably have believed that his use of a taser on a non-resistant subject was lawful.

The Court thus finds that Defendant Plummer is not entitled to qualified immunity. Consequently, his motion to dismiss is denied.

**V. Conclusion**

For the foregoing reasons, the Court DENIES Defendant Jennifer Myers' Motion to Dismiss (doc. 25) and Defendant Anthony Plummer's Motion to Dismiss (doc. 32).

SO ORDERED.

Dated: January 18, 2011          s/S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge

13